**WESTMORELAND COAL CO. v.
ROTHENSIES et al.**

**STONEGA COKE & COAL CO. v. SAME.**

Nos. 9197, 9199.

District Court, E. D. Pennsylvania.

Dec. 18, 1935.

Emil H. Molthan, of Philadelphia, Pa., for Stonega Coke & Coal Co.

Theodore Voorhees, for Barnes, Biddle & Myers, of Philadelphia, Pa., for Westmoreland Coal Co.

John Henry Lewin, Sp. Asst. to Atty. Gen., for defendants.

KIRKPATRICK, District Judge.

This application is for a preliminary injunction to restrain the collection of a tax. Now, regardless of the form in which it appears in the act of Congress (15 U.S.C.A. § 801 et seq.) and in the regulations, there is no doubt that, as a matter of substance, there are two taxes involved here. There is a tax of 1½ per cent. which is imposed upon all coal producers regardless of what action they may decide to take with reference to the Code. I have no question at all that that part is a valid excise tax, and I do not propose to interfere with it.

The remainder of the 15 per cent. really amounts to an additional 13½ per cent. levy and is frankly a coercive provision, having the major objective of compelling the members of the industry to enter the Code. It is apparent and not disputed that the purpose of this part of the exaction is to destroy the business of those who do not comply. It may be that the mere fact that such motive exists is no ground for striking down the so-called tax (I do not determine that at this time), but the additional fact that, if put into operation, it would undoubtedly accomplish its destructive purpose, does form a compelling reason to take the situation outside of the provisions of section 3224 of the Revised Statutes (26 U.S.C.A. § 1543), and I hold that section 3224 does not preclude this court from entering a preliminary injunction to restrain the imposition of so much of the tax as is imposed for the purpose of coercion.

Now, as to the basis for equitable interference. The plaintiffs can escape the imposition of this tax voluntarily. They can do so by becoming members of the Code. The real question before me on

this preliminary application is whether the plaintiffs by joining the Code, and thus voluntarily avoiding the imposition of this destructive tax, will be compelled to surrender valued rights and so seriously disturb their status quo in the industry as to make the interference of a court of equity proper.

There is what I might call a cautionary ground upon which courts of equity exercise jurisdiction and act to preserve a status quo where, apart from the question of what we might call absolutely irreparable injury, there is a threatened disturbance of the situation which is far-reaching and which it will do no real harm to hold in abeyance until the rights involved can be finally determined. Now, in this case the plaintiffs' only alternative to a destructive tax is to assume a certain status—that of Code members. After hearing all the arguments that have been addressed to me and reading the act, I am satisfied that the assumption of the status of Code members by the plaintiffs will put them in a position where they may suffer serious injury. At the very least it will effect a profound disturbance in their economic position and change the character of their business existence as corporations. I need not point out precisely every point at which the Code will impinge upon the freedom to conduct their business as they please which the plaintiffs are asserting and which they wish to continue, but it is perfectly obvious to any one who reads it that there will be very many such points. If the plaintiffs do as is suggested by the government—go into the Code preserving the full intention of testing whatever rights they may have, by violating each and every provision of the Code as they are called upon to comply with them—it may be that they will have administrative and legal remedies under the Code, but they will nevertheless subject themselves to grave risks of cumulative penalties and a certainty of a multiplicity of suits. In effect what it really would amount to would be exchanging the status of a free unrestricted competitive industry for that of a regulated and controlled industry, and it is beyond question that that is an absolute change in their corporate life and their corporate manner of existence. I am not at this time suggesting any thought as to whether it will be for the plaintiffs' advantage to make that change. Congress thinks it will, and the plaintiffs think it will not. Using the language of the opponents of each of the schools of thought involved, if the change is made the plaintiffs will have exchanged the law of the jungle for a strait-jacket. Now, it cannot be suggested that that is not a very profound and far-reaching change which the plaintiffs have at least the right to resist by a proceeding which will not subject them to the multiplicity of suits, possible cumulative penalties, and general control of business which a Code status would imply.

The basis of this order is the preservation of the status quo until such time as a final adjudication can be made as to the constitutionality of the law. I am not expressing any opinion as to the constitutionality of the act or any provision of it.

A preliminary injunction may issue as prayed for in the bill, but only upon the condition that the plaintiffs will deposit in the registry of the court the amount of the 1½ per cent. of tax each month as it comes due, plus 1 per cent. for the costs of the registry.